UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| JARED BALVIN,<br><br>                Plaintiff,<br><br>vs.<br><br>AMERICAN FAMILY MUTUAL INSURANCE COMPANY,<br><br>                Defendant. | 4:19-CV-04153-LLP<br><br>ORDER GRANTING DEFENDANT'S MOTION TO COMPEL<br><br>DOCKET NO. 40 |

## INTRODUCTION

This matter is before the court on plaintiff Jared Balvin's third amended complaint alleging breach of contract for failure to pay underinsured motorist benefits against defendant American Family Mutual Insurance Company ("American Family"). See Docket No. 20. Jurisdiction is premised on the diverse citizenship of the parties and an amount in controversy in excess of $75,000. See 28 U.S.C. § 1332. Now pending is defendant's motion to compel plaintiff to provide discovery responses. See Docket No. 40. The district court, the Honorable Lawrence L. Piersol, referred the motion to this magistrate judge for determination. See Docket No. 43.

## FACTS

Mr. Balvin filed this lawsuit in federal court on September 4, 2019, alleging claims of breach of contract for failing to properly evaluate and pay

underinsured motorist benefits against his insurer after an underinsured motorist rear-ended a vehicle he was riding in.  After that motor vehicle collision, Mr. Balvin sued the underinsured motorist in the United States District Court for the District of Nebraska to recover damages.  See Balvin v. Steffen, 4:17-cv-03132-JMG-SMB (D. Neb.).  After a potential settlement in that case was reached, Mr. Balvin alleges he notified American Family about the settlement and demanded underinsured motorist benefits under his underinsured motorist policy and his umbrella policy, which he alleges provided additional underinsured motorist benefits.  Mr. Balvin has alleged American Family violated their insurance contract by failing to pay any benefits in excess of the tortfeasor's limits coverage of $100,000.  See Docket No. 20.

American Family served Mr. Balvin with interrogatories and requests for production on February 24, 2021.  After delays and missed deadlines, Mr. Balvin served unsigned responses to these discovery requests on April 15, 2021.  See Docket No. 42-4.  American Family sent a letter to Mr. Balvin's counsel on April 21, 2021, acknowledging receipt of the responses and lodging several complaints about the completeness of the responses and the propriety of certain objections raised therein.  American Family asked Mr. Balvin's counsel to supplement the responses.  See Docket No. 42-5.  On May 14, 2021, Mr. Balvin's counsel served supplemental responses addressing some of American Family's complaints about his initial discovery responses.  See Docket No. 42-7.  American Family sent Mr. Balvin's lawyer a letter on May 17, 2021, reasserting several of the previously raised complaints.  See Docket

2

No. 42-8.  It appears Mr. Balvin's counsel did not respond to this letter, and American Family filed a motion to compel discovery on May 21, 2021.  See Docket No. 40.

The motion to compel requests an order directing Mr. Balvin to comply fully with his discovery obligations, specifically as to one interrogatory and two requests for production.  American Family also asks for an award of attorneys' fees under Federal Rule of Civil Procedure 37(a)(5).

According to American Family, several of Mr. Balvin's supplemental answers are inadequate.  Namely, American Family asserts Mr. Balvin's responses to the following discovery requests are incomplete: (i) interrogatory number 25; (ii) request for production number two; and (iii) request for production number 12.

Mr. Balvin, in his response brief, reasserts the work-product privilege and argues that doctrine precludes the production of the documents American Family requested in request for production number two.  Mr. Balvin's response does not specifically address arguments related to American Family's interrogatory number 25 or request for production number 12.

## DISCUSSION

**A.    Standards Governing Discovery**

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery in civil cases pending in federal court:

> *Scope in General.*  Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case,

> considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within the scope of discovery need not be admissible in evidence to be discoverable.

See FED. R. CIV. P. 26(b)(1).

If a party fails to respond to a proper request for discovery, or if an evasive or incomplete response is made, the party requesting the discovery is entitled to move for a motion compelling disclosure after having made a good-faith effort to resolve the dispute by conferring first with the other party. See FED. R. CIV. P. 37(a).

The scope of discovery under Rule 26(b) is extremely broad. See 8 Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 2007 (3d ed. Oct. 2020 update). The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." Id. (quoting Hickman v. Taylor, 329 U.S. 495, 507-08 (1947)). The Federal Rules distinguish between discoverability and admissibility of evidence. FED. R. CIV. P. 26(b)(1), 32, and 33(a)(2) & (c). Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial. But these considerations are not inherent barriers to discovery.

Discoverable information itself need not be admissible at trial; rather, the defining question is whether it is within the scope of discovery. See FED. R. CIV.

P. 26(b)(1).  Additionally, the court may limit the frequency and extent of discovery.  See FED. R. CIV. P. 26(b)(2); see also Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit."); Cont'l Ill. Nat'l Bank & Trust Co. of Chi. v. Caton, 136 F.R.D. 682, 684-85 (D. Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto.  Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.").

American Family was under a duty to meet and confer with Mr. Balvin before filing this motion to attempt to resolve the parties' discovery dispute.  American Family asserts it satisfied that duty and has submitted a detailed record of the parties' communications about discovery.  Mr. Balvin does not dispute that American Family has satisfied this duty.  Accordingly, the motion is ripe for decision.

**B.   Individual Discovery Requests and Objections**

    **1.   Interrogatory Number 25**

This interrogatory asks, "Within the last ten (10) years, have you ever undergone an Independent Medical Examination?  If so, please state:  a. [t]he year of the examination; b. [t]he doctor who performed the examination; and c. [t]he reason for undergoing the examination."  See Docket No. 42-1 at p. 6.  Mr. Balvin responded, "No, I have never undergone any sort of truly

5

independent medical examination by a doctor selected by a judge or a trier of fact." See Docket No. 42-4 at p. 9.

American Family complained that this answer was deficient in its April 21st letter. American Family stated, "An independent medical examination does not need to be conducted by a doctor selected by a judge or trier of fact. South Dakota law clearly sets forth what an independent medical examination is, and it is not required that the doctor be selected by a judge or trier of fact." See Docket No. 42-5 at p. 4.

Mr. Balvin's counsel addressed this complaint in his May 14th letter supplementing the discovery responses. He responded, "this Interrogatory is objected to. I have never undergone an actual independent medical examination." See Docket No. 42-7 at p. 9. Mr. Balvin did not state a basis for his objection, and he answered the interrogatory despite objecting.

In its brief in support of the motion to compel, American Family notes Mr. Balvin's supplemental response and further asserts that Mr. Balvin's answer is deficient because the interrogatory requests information related to independent medical examinations Mr. Balvin underwent in the course of the underlying case. American Family has not furnished any information suggesting Mr. Balvin's supplemental response is incorrect or incomplete, i.e., information suggesting Mr. Balvin actually did undergo an independent medical examination. As such, the court has no reason to believe Mr. Balvin's supplemental response is incomplete. The court is satisfied with Mr. Balvin's response to this interrogatory, and, despite the unspecified objection he raised,

the court can hardly compel him to answer an interrogatory he has already answered.  American Family's motion to compel a supplemental answer to interrogatory number 25 is denied.  The court notes that if it should be determined that Mr. Balvin *has* previously undergone an independent medical examination at the request of an opposing party, he may be subject to sanctions including American Family's costs in determining the truth of this matter.  See FED. R. CIV. P. 37.

      **2.**      **Request to Produce Number 12**

American Family has also asked the court to compel Mr. Balvin to comply fully with its request to produce number 12.  This request seeks "a copy of all reports regarding any Independent Medical Examination that you have undergone in the past ten (10) years."  See Docket No. 42-1 at p. 8.  In his initial response to this request, Mr. Balvin answered, "N/A."  See Docket No. 42-4 at p. 14.  Mr. Balvin's supplemental response regarding this request directed American Family to his supplemental answer to interrogatory number 25 ("I have never undergone an actual independent medical examination") and objected to the request, stating, "It is our understanding that defense counsel in the tort action has directly refused your telephonic request to provide you with his expert opinions or any other work product of his or documents under his control and/or ownership."  See Docket No. 42-7 at p. 10.

The latter part of this response sounds in the work-product doctrine.  To the extent this doctrine is implicated in this response, the court considers the merits of Mr. Balvin's legal position in section B.3. herein.

7

However, as explained with respect to interrogatory number 25, Mr. Balvin stated in his supplemental answers that he had never undergone an independent medical examination. It follows that he therefore has no reports regarding any independent medical examination of him. American Family has presented nothing to suggest that Mr. Balvin actually did undergo such an examination, and therefore the court concludes Mr. Balvin adequately answered this request with his supplemental answers. American Family's motion to compel as to request to produce number 12 is denied. Again, Mr. Balvin is reminded of the serious consequences of not producing a copy of any IME reports should there actually be one or more in existence.

### 3.     **Request to Produce Number Two**

Lastly, American Family seeks an order compelling Mr. Balvin to respond to request to produce number two. That request asks for "a copy of any expert opinions obtained from opposing counsel in the underlying action." See Docket No. 42-1 at p. 6. In his initial response, Mr. Balvin objected to this request and stated, "any such report would be work product of and owned by opposing counsel and expert." See Docket No. 42-4 at p. 10.

American Family responded to this objection in its April 21st letter. American Family asserted Mr. Balvin's objection was invalid because his counsel does not have the ability to assert the work-product privilege as to another attorney's work product. The response further argued that Mr. Balvin's attorney could not claim work-product protection as to documents

8

disclosed to him by opposing counsel in the underlying tort action.  See Docket No. 42-5 at p. 5.

In his supplemental answers, Mr. Balvin objected on the same grounds asserted in his objection to request for production number 12.  First, he directed American Family to his answer to interrogatory number 25, then objected on the basis that "defense counsel [in the underlying tort action] has already directly refused your telephonic request to provide you with his expert opinions or any other work product of his or documents under his control/ownership."  See Docket No. 42-7 at p. 9.

American Family's argument in favor or production is one of standing, i.e., that Mr. McCahren (Mr. Balvin's attorney) does not have standing to assert the work-product privilege over work which was prepared by or for the opposing party in the underlying tort case, not prepared in anticipation of this litigation.

"In a diversity case, such as this one, courts must 'apply federal law to resolve work product claims.' "  McElgunn v. Cuna Mut. Grp., No. 06-cv-05061-KES, 2008 WL 5105453, at *1 (D.S.D. Dec. 2, 2008) (quoting Baker v. Gen. Motors Corp., 209 F.3d 1051, 1053 (8th Cir. 2000).  The Supreme Court established the work-product privilege in Hickman v. Taylor, 329 U.S. 495 (1947), and the doctrine is codified in Federal Rule of Civil Procedure 26(b).  That Rule states:

> (b)(3)  **_Trial Preparation:  Materials._**
>
> (A)  _Documents and Tangible Things_.  Ordinarily, a party may not discover documents and tangible things that are prepared in

9

anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  But, subject to Rule 26(b)(4), those materials may be discovered if:

>  (i) they are otherwise discoverable under Rule 26(b)(1); and

>  (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

\* \* \*

(5) ***Claiming Privilege or Protecting Trial-Preparation Materials.***

(A) *Information Withheld.*  When a party withholds information otherwise discoverable by claiming that the information is . . . subject to protection as trial-preparation material, the party must:

>  (i) expressly make the claim; and

>  (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

See FED. R. CIV. P. 26(b)(3)(A) & (5)(A).

Work product falls into two categories: "ordinary" and "opinion." Baker, 209 F.3d at 1054.  Ordinary work product includes raw factual information.  Id.  Opinion work product involves an attorney's "mental impressions, conclusions, opinions or legal theories."  Id.

A party seeking discovery of ordinary work product may overcome the doctrine by showing they have a substantial need for the materials, and they cannot obtain the materials or their substantial equivalent by other means.  Id.  Opinion work product, however, enjoys almost total

immunity; it can be discovered only in "very rare and extraordinary circumstances" such as when the "attorney engaged in illegal conduct or fraud." Id.

The party resisting discovery must show that the materials were prepared in anticipation of litigation. PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP, 305 F.3d 813, 817 (8th Cir. 2002); FED. R. CIV. P. 26(b)(5)(A).  Furthermore, that same party must "describe the nature of the documents, communications, or tangible things not produced or disclosed" with sufficient detail to "enable other parties to assess the claim." See FED. R. CIV. P. 26(b)(5)(A)(ii).

Mr. Balvin's position is summarized in his response brief: "Defendant requests this Court order Plaintiff to turn over documents which are clearly not discoverable as they are work product of attorney Mark Fitzgerald." See Docket No. 45 at p. 1.  Mr. Balvin also represents that Mr. Fitzgerald has informed counsel for American Family that he will not provide anything, including his work product in the underlying tort action.  It is uncontroverted that Mr. Balvin's counsel has in his possession the documents American Family seeks.

The question before the court is therefore whether Mr. McCahren can assert the work-product privilege over expert reports prepared in anticipation of litigation in the underlying tort case by an opposing party.  He cannot.

One of the most basic tenets of the work-product doctrine is that it protects the impressions and opinions of legal counsel so that "the lawyer can

prepare his case free from adversarial scrutiny." In re Special September 1978 Grand Jury (II), 640 F.2d 49, 62 (7th Cir. 1980).  The work-product privilege protects the attorney's thought processes and legal recommendations.  In re Grand Jury Proceedings #5, 401 F.3d 247, 250 (4th Cir. 2005).

With respect to communications between Mr. McCahren and Mr. Fitzgerald, Mr. McCahren has no standing to invoke the work-product privilege to protect Mr. Fitzgerald's—or any of Mr. Fitzgerald's agents'— opinions, thought processes, or mental impressions from disclosure.  This is because Mr. Fitzgerald is not Mr. Balvin's attorney and neither Mr. Fitzgerald nor his agents are representatives of Mr. McCahren.  See Nat'l Football League Players Ass'n v. Nat'l Football League, Civ. Nos. 08-6254 (PAM/JJG), 08-6255 (PAM/JJG), 2009 WL 10711633, at *1 (D. Minn. Apr. 7, 2009) ("Work product includes the legal opinions and theories of not only a party's lawyer but also the party's agent and other representatives of the party.").  See also S.D.C.L. § 19-19-502(a)(4) ("[a] 'representative of the lawyer' is one employed by the lawyer to assist the lawyer in the rendition of professional legal services.").  It is Mr. Balvin's burden to show that the work-product privilege protects the requested information.  See PepsiCo, Inc., 305 F.3d at 817.  That burden would require Mr. McCahren to show that Mr. Fitzgerald and/or Mr. Fitzgerald's agents are the representatives of Mr. McCahren or that Mr. Fitzgerald is himself an attorney for Mr. Balvin.  He has not met this burden.

Further, parties are generally barred from invoking the attorney's work-product privilege with respect to disclosures made to opposing counsel or

adverse third parties.  See Pittman v. Frazer, 129 F.3d 983, 988 (8th Cir. 1997); United States v. Johnson, 378 F. Supp. 2d 1041, 1047 (N.D. Iowa 2005) (quoting Genentech, Inc. v. United States Int'l Trade Comm'n, 122 F.3d 1409, 1415 (Fed. Cir. 1997)) ("Generally disclosure of confidential communications or attorney work product to a third party, such as an adversary in litigation, constitutes a waiver of privilege as to those items."); In re Chrysler Motors Corp. Overnight Evaluation Program Litig., 860 F.2d 844, 846 (8th Cir. 1988) (quotation omitted) ("Disclosure to an adversary waives the work product protection as to items actually disclosed, even where disclosure occurs in settlement.").  See also South Dakota v. Rickabaugh, 361 N.W.2d 623, 625 (S.D. 1985) (voluntary disclosures to persons outside the attorney-client relationship waive the privilege).  Therefore, any work-product privilege that could have been asserted on Mr. Fitzgerald's behalf was waived when he disclosed his experts' opinions to Mr. McCahren, his adversary in the underlying tort litigation.  Accordingly, the court finds that any expert reports Mr. McCahren obtained from opposing counsel in the underlying tort action are not protected by the work-product doctrine and shall be disclosed to American Family's counsel.

**C.    American Family's Requests for Sanctions**

American Family also asks the court for an award of costs and attorneys' fees for bringing this motion to compel under Federal Rule of Civil Procedure 37(a)(5)(A).  That rule states:

> (5) *Payment of Expenses; Protective Orders.*
>
> > (A) *If the Motion Is Granted (or Disclosure or Discovery Is Provided After Filing).* If the motion is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising the conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
> >
> > > (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> > >
> > > (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
> > >
> > > (iii) other circumstances make an award of expenses unjust.

FED. R. CIV. P. 37(a)(5)(A). To satisfy this hearing requirement, the court "can consider such questions on written submissions as well as on oral hearings." FED. R. CIV. P. 37(a)(4) advisory committee's note to 1993 amendment (regarding Rule 37(a)(4), which has since been renumbered as Rule 37(a)(5)).

Here, the court has granted American Family's motion to compel a response to a specific discovery request. Therefore, American Family meets the first criterion of Rule 37(a)(5)(A). And American Family first raised the issue of Rule 37 costs and attorneys' fees in its motion to compel. See Docket No. 41 at pp. 7-8. Therefore, Mr. Balvin had an opportunity to be heard when it responded in writing to American Family's motion. With these requirements satisfied, the court examines whether any of the exceptions outlined in Rule 37(a)(5)(A)(i)-(iii) apply. If none of the exceptions apply, the court must award costs. FED. R. CIV. P. 37(a)(5)(A).

First, American Family must not have filed the motion before attempting in good faith to obtain the disclosure or discovery without court action. American Family submitted to the court documentation showing repeated attempts to resolve the discovery disputes without involving the court, and Mr. Balvin has not alleged any contrary facts or information. Therefore, the court finds that American Family did not file this motion to compel before attempting in good faith to resolve its discovery disputes with Mr. Balvin.

Next, the court considers whether Mr. Balvin's non-disclosure, response, or objection was substantially justified. Mr. Balvin has presented no information or evidence justifying its repeated delays and non-disclosure of the documents at issue in this motion to compel. Further, for the reasons stated herein, Mr. Balvin's objection on the basis of the work-product privilege was not substantially justified. "Because [Mr. Balvin] ha[s] no substantial justification for refusing to disclose these documents" (Bone Shirt v. Hazeltine, No. CIV. 01-3032-KES, 2003 WL 27384630, at *3 (D.S.D. Aug. 15, 2003)), the court finds this second exception does not bar American Family's recovery of costs.

Lastly, Mr. Balvin has not identified any other circumstances that make the award of expenses on this second motion to compel unjust. Therefore, there is "no substantial justification for [Mr. Balvin's] incomplete and untimely responses" (Heil v. Belle Starr Saloon & Casino, Inc., No. Civ. 09-5074-JLV, 2011 WL 13353218, at *4 (D.S.D. Aug. 3, 2011)), and expenses are required by Rule 37(a)(5)(A). American Family's request for expenses related to this motion

15

to compel is granted. American Family is directed to submit an affidavit of its costs and attorney's fees associated with this motion within 28 days of this order along with an accounting of attorney hours and description of what those hours represent in terms of attorney work. Mr. Balvin shall have 21 days thereafter to file objections to the hours or amount of fees requested.

**CONCLUSION**

Based on the foregoing facts, law, and analysis, it is hereby

ORDERED that the motion to compel [Docket No. 40] filed by defendant American Family Mutual Insurance Company is granted as to request for production number two and denied as to interrogatory number 25 and request for production number 12.  Plaintiff Jared Balvin shall provide, within 15 days of the date of this order, a copy of any expert reports obtained from opposing counsel in the underlying action.

ORDERED that American Family Mutual Insurance Company shall be entitled to reasonable costs and attorneys' fees for bringing this motion to compel.  American Family Mutual Insurance Company shall file an affidavit with proof of service setting forth the time reasonably spent on this motion, the hourly rate requested for attorneys' fees and costs, and any factual matters pertinent to the motion for attorneys' fees within 28 days of this order. Mr. Balvin shall file any and all objections to the allowance of fees within 21 days after receipt of service of American Family's motion and affidavit. Mr. Balvin may, by counter affidavit, controvert any of the factual matters contained in American Family's motion and may assert any factual matters bearing on the award of attorneys' fees.  D.S.D. LR 54.1(C).

DATED July 19, 2021.

BY THE COURT:

*/s/ Veronica L. Duffy*
VERONICA L. DUFFY
United States Magistrate Judge